IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RAMONA R. HEFLIN-BUESCHER,                    Case No. 6:15-cv-01875-PK

        Plaintiff,                                    OPINION AND ORDER

        v.

CAROLYN W. COLVIN,

Acting Commissioner of Social
Security,

        Defendant.

---

PAPAK, Magistrate Judge:

        Ramona R. Heflin-Buescher ("Plaintiff") seeks judicial review of the Commissioner of

Social Security's ("Commissioner") decision denying her application for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act ("Act"). This Court has jurisdiction

over Plaintiff's action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). I have considered the

parties' briefs and all evidence in the administrative record. For the reasons set forth below, the

Commissioner's final decision is AFFIRMED.

## PROCEDURAL BACKGROUND

        Plaintiff protectively filed an application for SSI on May 23, 2012, alleging disability

beginning January 1, 2008. Following a denial of benefits, Plaintiff requested a hearing before an

1 – OPINION AND ORDER

ALJ. On January 30, 2014, ALJ MaryKay Rauenzahn held a hearing. Plaintiff was represented by counsel and testified, as did Vocational Expert ("VE") Mark McGowan. On March 21, 2014, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. The Appeals Council denied review on August 7, 2015, and this action followed.

## DISABILITY ANALYSIS

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 404.1520(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also*

20 C.F.R. § 404.1520(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c). Nevertheless, it is well established that "the step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (*citing Bowen*, 482 U.S. at 153-54). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect' on an individual[']s ability to work." *Id.*, *quoting* Social Security Ruling ("SSR") 85-28, 1985 SSR LEXIS 19 (1985).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and the fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. § 404.1520(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and

continuing basis,[1] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 404.1545(a); *see also* S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(a)(4)(iv), 404.1520(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560( c), 404.1566. If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404,1520(g), 404.1560(c), 404.1566. A claimant will be found entitled to benefits if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

---

[1] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. No. 96-8p, 1996 SSR Lexis 5 (July 2, 1996).

## LEGAL STANDARD

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (*citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (*quoting Reddick v. Chafer*, 157 F.3d 715, 720 (9th Cir. 1998)). The court may not substitute its judgment for that of the Commissioner. *See Id.* (*citing Robbins*, 466 F.3d at 882); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent findings of fact in determining whether the ALJ's findings are supported by substantial evidence of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)).

When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, "cannot affirm the Commissioner's

decision on a ground that the Administration did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## SUMMARY OF ADMINISTRATIVE RECORD[2]

Plaintiff was 41 years old on her alleged onset date of January 1, 2008. Tr. 11.[3] She completed the ninth grade. Tr. 189. Prior to her claimed disability onset date, Plaintiff worked as a truck driver and construction flagger. *Id.* Plaintiff alleges that she is unable to work due to neuropathy, irritable bowel syndrome ("IBS"), depression, anxiety, diabetes, and high blood pressure. Tr. 188.

### I. The Medical Record

The parties are familiar with the medical record. Therefore, it will be set out herein only as necessary.

### II. The Hearing Testimony

On January 30, 2014, ALJ Rauenzahn held a hearing in connection with Plaintiff's application for SSI. Tr. 32-65.

Plaintiff testified that she was 47 years old and lived at home with four children. Tr. 35-36. She had a driver's license, but voluntarily chose not to drive because she could not feel her feet and her vision had deteriorated. Tr. 36. She testified that she could read and write, and

---

[2] The following recitation constitutes a summary of the evidence contained within the Administrative Record, and does not reflect any independent finding of fact by the court.
[3] Citations to "Tr." Refer to the page(s) indicated in the official transcript of the Administrative Record filed herein as Docket No. 11.

completed the ninth grade. Tr. 37. Plaintiff ran a trucking company for "a few years," during

which she "did all the billing, the payroll, dispatched and I drove bobtail." Tr. 38.

Plaintiff stated that she chose January 1, 2008 as her disability onset date because her

neuropathy and depression began affecting her ability to stand, sleep, and sit still. Tr. 37. When

asked why she could not perform a "sit down job," Plaintiff stated that she had difficulty

functioning in daily life. Tr. 38. She further stated that the "idea of leaving [her] house makes

[her] very sick," and upset. Tr. 39. When asked why she ceased her therapy appointments, she

reported that her therapist retired and the idea of finding a new therapist was too daunting. *Id.*

Plaintiff stated that she is frequently noncompliant with her medication regimen because

she "has a hard time taking [her] medicine" and felt like her medications were ineffective. *Id.*

She stopped smoking marijuana one month before the hearing, and before that smoked an ounce

every three weeks. *Id.* Plaintiff testified that she stopped taking her narcotic medications because

they made her feel sick. Tr. 40. The ALJ pointed out that the medical records showed that

Plaintiff's doctor refused to prescribe her more narcotic medication because Plaintiff was

smoking marijuana. *Id.* The ALJ further pointed out that Plaintiff checked in to an emergency

room in an attempt to receive narcotic medication. *Id.* Plaintiff argued that she did not attempt to

"get pain pills," and became upset when she was offered narcotic medication. *Id.*

Plaintiff testified that she tried to exercise with her son twice a week in her garage. *Id.*

She stated that she had problems with night terrors and sleeping in general. Tr. 41. She wore a

knee brace, and had not received treatment for her "trick knee" other than an MRI in August

2012. *Id.* She testified that she could not walk more than a block without stopping to rest, and

could stand for five to ten minutes in the kitchen or grocery store. *Id.* She stated that she could

lift up to 20 pounds, lift her arms above her head, rarely bend over to pick something up off the

ground, never crouch, kneel, or open jars with her hands, and slowly climb one flight of stairs. Tr. 43.

Plaintiff testified that she sleeps for 16 to 18 hours per day and watches television for the remainder of the day, and her children perform most of the household chores. Tr. 45. She stated that she could not read because her vision had deteriorated. *Id.* Plaintiff cared for two homeless children in addition to her two biological children. Tr. 46.

## ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 23, 2012, the application date. Tr. 13.

At the second step, the ALJ found that Plaintiff's suffered from the following severe impairments: diabetes mellitus, neuropathy in bilateral feet, hypertension, gastroesophageal reflux disorder, asthma, anxiety disorder versus posttraumatic stress disorder, depression, insomnia, degenerative joint disease of the left knee, obesity, and methamphetamine addiction in current remission. *Id.* The ALJ found that Plaintiff's IBS, vision problems, and neuropathy in her hands were not severe impairments. Tr. 13-14.

At the third step, the ALJ concluded that Plaintiff's impairments do not meet or equal the criteria for any condition in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* The ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except:

> [s]he can stand and walk two hours in an eight-hour workday; occasionally climb stairs and ramps; cannot climb ladders, ropes or scaffolds; and can occasionally stoop and crouch. She cannot kneel or crawl; and can frequently, not constantly, bilaterally handle and finger. She should have no concentrated exposure to extreme cold or vibrations; no exposure to workplace hazards such as unprotected heights or dangerous machinery; no exposure to dust, fumes or gasses in

8 – OPINION AND ORDER

concentrations greater than those generally found in the ordinary office environment; and should not be required to ambulate over uneven surfaces. She is able to understand, remember and carry out only simple instructions that can be learned in 30 days or less; can have occasional public contact and occasional coworker contact, with no group tasks/ she should be permitted to sit and stand as needed for comfort while remaining on task; and be permitted one to two ordinary bathroom breaks per day in addition to access during normal breaks.

Tr. 15.

At the fourth step, the ALJ concluded that Plaintiff was unable to perform any past relevant work. Tr. 22. However, at step five, the ALJ found jobs exist in significant numbers in the national economy that Plaintiff can perform, including assembler of small products, electronics assembler, and computer controlled color photograph printer operator. Tr. 23. As a result, the ALJ concluded Plaintiff has not been disabled from January 1, 2008, through the date of her decision. *Id.*

## DISCUSSION

Plaintiff argues the ALJ erred by failing to: (1) provide clear and convincing reasons to reject Plaintiff's subjective symptom testimony; (2) find Plaintiff's IBS a "severe" impairment; (3) credit the lay witness testimony; and (4) prove that Plaintiff retains the ability to perform "other work" in the national economy.

I.    Subjective Symptom Testimony

When evaluating the credibility of a plaintiff's testimony regarding the severity and limited effect of the plaintiff's symptoms, the ALJ must engage in a two-step analysis. *Lingenfelter*, 504 F.3d at 1035-36. "First, the ALJ must determine whether the [plaintiff] has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036 (internal citations and quotation marks omitted); 20 C.F.R. §§ 404.1529, 416.929. The plaintiff is not required to show

9 – OPINION AND ORDER

that her impairment "could reasonably be expected to cause the severity of the symptom she has

alleged; she need only show that it could reasonably have caused some degree of the symptom."

*Id.* (quoting *Smolen*, 80 F.3d at 1282). If the plaintiff meets the first test and there is no evidence

of malingering, the ALJ can only reject the plaintiff's testimony about the severity of the

symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id.* To support a

lack of credibility finding, the ALJ is required to "point to specific facts in the record which

demonstrate that [the plaintiff] is in less pain than she claims." *Dodrill v. Shalala*, 12 F.3d 915,

918 (9th Cir. 1993).

The ALJ did not find evidence of malingering; therefore, the ALJ was required to give

clear and convincing reasons for doubting Plaintiff's subjective symptom testimony.

A. Noncompliance with Recommended Treatment

The ALJ doubted Plaintiff's subjective symptom testimony because she failed to comply

with treatment recommendations from her physicians. An ALJ may rely on a plaintiff's

"unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

of treatment" to doubt her subjective testimony. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir.

2012) (*quoting Tommasetti v Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)). Plaintiff ignored her

physicians' prescribed dietary and exercise lifestyle changes relating to her diabetes. Tr. 16.

Plaintiff argues that she "[did] not know what a diabetic diet [was]," as evidenced by her fruit

based diet in August, 2011. Tr. 368-69. However, the record shows that upon her diabetes

diagnosis in May, 2008, her physician "discussed diabetes at length today and the importance for

a diabetic diet and exercise." Tr. 283. Plaintiff further argues that her lack of insurance prevented

her from complying with diet and exercise recommendations. This argument is unpersuasive, as

Plaintiff knew her doctors' recommendations and insurance has little effect on exercise and diet changes.

Additionally, Plaintiff failed to consistently check her blood sugars, against the recommendations of her physicians. Tr. 349-50, 370, 396, 430. Plaintiff argues that she lost her insurance and could not afford test strips and medical appointments, and should not be discredited for failing to comply with a treatment course she could not afford. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). The record demonstrates that Plaintiff lost her insurance from November, 2011 to January, 2012, and she could not otherwise afford her medications in July, 2010. Tr. 360, 362, 400. However, many instances of noncompliance occur on dates when Plaintiff had insurance and could afford her medication. Tr. 360, 370, 396. Therefore, the ALJ did not err to the extent that she relied on Plaintiff's noncompliance on dates coinciding with her ability to afford treatment.

As further evidence of Plaintiff's noncompliance with her physicians' recommendations, the ALJ noted that Plaintiff smoked marijuana regularly, despite suffering from asthma. Indeed, Dr. Lana Gee-Gott, Plaintiff's physician, opined that her asthma was significantly worse at the same appointment she noted that Plaintiff began smoking marijuana daily. Tr. 379-80.

Plaintiff argues that her emotional distress, anxiety, and depression prevented her from effectively managing her health conditions. However, this notion strains credulity. Plaintiff remained complaint with several medication regimens during emotionally turbulent times, and reportedly self-medicated with marijuana daily.

The ALJ did not err in relying on Plaintiff's many instances of noncompliance to doubt her subjective symptom testimony.

B. Inconsistencies Between Plaintiff's Testimony and the Record

The ALJ noted several discrepancies between Plaintiff's testimony and the record. An ALJ may use contradictions between a plaintiff's testimony and the medical record to reject the plaintiff's subjective testimony. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). On November 18, 2012, Plaintiff reported to an emergency room and requested a refill of methadone, which she stated she had been taking for two years. Tr. 545. However, the record indicates that Plaintiff was prescribed methadone once, in 2010, and the prescription was for a single occasion. Tr. 401. While the ALJ stated that Dr. Gee-Gott never prescribed Plaintiff methadone, that error is harmless as the thrust of the ALJ's argument remains true. The ALJ did not err in identifying this discrepancy.

The ALJ also noted that while Plaintiff reported that her agoraphobia confined her to her home, she was able to take a bus and walk to the hearing without difficulty. Tr. 21. Plaintiff argues that agoraphobia is a condition that relies on self-reporting, and both lay witnesses indicated that Plaintiff does not leave the house to shop. Tr. 216, 258. However, Plaintiff was able to ride public transportation to the hearing and regularly attends medical appointments. While Plaintiff's argument is not wholly unsupported, the ALJ's interpretation was rational and therefore cannot be overturned. *See Tackett*, 180 F.3d at 1098 ("If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.").

Plaintiff stated that she voluntarily chose to wean herself off pain medication, but the ALJ noted that Plaintiff actually stopped using pain medication because Dr. Gee-Gott terminated the doctor-patient relationship. Tr. 18. The ALJ's interpretation is supported by the record, which reflects that Plaintiff ceased using Morphine in November and December of 2012 because she could not obtain a prescription refill, not because she chose to wean herself off the medication.

Tr. 553. That interpretation is further supported by a third party function report, completed in December 2012, wherein Plaintiff's daughter stated that she "is withdrawing off of 90 mg of morphine a day because her primary care doctor dropped her cold." Tr. 262.

The ALJ also stated that Plaintiff was dismissed from Dr. Gee-Gott's practice due to noncompliance issues. Tr. 18, 20. However, this is unsupported by the record. There is no direct evidence establishing the reason Dr. Gee-Gott terminated the doctor-patient relationship.

The ALJ did not err in identifying several inconsistencies between Plaintiff's testimony and the record. Although ALJ erred in relying on Plaintiff's dismissal from Dr. Gee-Gott's medical practice, that error was harmless. *Carmickle*, 533 F.3d at 1162-63.

## C. Plaintiff's Activities

The ALJ impugned Plaintiff's subjective symptom testimony, finding her daily activities were inconsistent with her alleged level of disability. Inconsistency between a plaintiff's testimony and her activities of daily living is a clear and convincing reason to discredit her subjective symptom testimony. *Tommasetti*, 533 F.3d at 1039. The ALJ noted that Plaintiff allowed two homeless youths to live in her home, in addition to her two biological children. Tr. 36, 45. She also provided babysitting services for her grandchild and the child of a friend. Tr. 18. These activities generally refute Plaintiff's contention that she sleeps for 16 to 18 hours per day and is incapable of performing household chores. Additionally, I note that Plaintiff reported to her psychiatrist that she "does not feel appreciated for all she does for the family," further contradicting Plaintiff's testimony that she is completely disabled. Tr. 428.

The ALJ stated that Plaintiff's symptom testimony was inconsistent with her statement that she was able to "hang out and watch movies everyday" with her friend. This is erroneous, as watching television is an undemanding activity that has no meaningful relationship to workplace

13 – OPINION AND ORDER

activities. *Orn*, 495 F.3d at 639. However, this error was harmless, as the ALJ provided other inconsistencies between Plaintiff's daily activities and her testimony. *Carmickle*, 533 F.3d at 1162-63.

Finally, the ALJ doubted Plaintiff's subjective testimony due to her "tenuous connection to the workforce with a minimal work history even before her alleged onset of disability." Tr. 17. A plaintiff's poor work history is a clear and convincing reason to doubt her subjective testimony. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (the plaintiff's "extremely poor work history" and the fact that she "has shown little propensity to work in her lifetime" weighed against her subjective testimony).

For all the foregoing reasons, the ALJ gave clear and convincing reasons to doubt Plaintiff's subjective symptom testimony. An ALJ's overall subjective symptom decision may be upheld even if all reasons are not clear and convincing, so long as some clear and convincing reasons remain. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

II.     Failure to Consider IBS a Severe Impairment

At step two, the ALJ must consider the medical severity of plaintiff's impairments. *See Bowen*, 482 U.S. at 140-141 (1987); *see also* 20 C.F.R. § 419.920(a)(4)(ii). An impairment is "severe" if it significantly limits the plaintiff's ability to perform basic work activities and is expected to continue for a period of twelve months or longer. *Bowen*, 482 U.S. at 141. A person who is able to perform basic work activity possesses the "abilities and aptitudes necessary to do most jobs." *Id.* If the ALJ finds that the plaintiff's impairments are not severe or do not meet the duration requirement, the plaintiff will be found not disabled under the meaning of the Act. *Id.* However, if the ALJ determines that the plaintiff does indeed suffer from a severe impairment, the ALJ will proceed with the next steps of the evaluation. 20 C.F.R. § 416.920(a)(4)(ii-iii);

14 – OPINION AND ORDER

*Burch*, 400 F.3d at 679.  At step two, a claim will be rejected only if the evidence establishes that

the plaintiff's impairments establish only a slight abnormality that has no more than a minimal

effect on an individual's ability to work. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005);

S.S.R. 96-3p. Accordingly, the step-two inquiry is merely a *de minimus* screening device to

dispose of groundless claims. *Smolen*, 80 F.3d at 1290 (citing *Bowen*, 482 U.S. at 137, 153-54).

Plaintiff alleges that her IBS should be considered a severe impairment at step two. "A

physical or mental impairment must be established by medical evidence consisting of signs,

symptoms, and laboratory findings, not only by [a plaintiff's] statement of symptoms. 20 C.F.R.

§ 416.908; *see Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (A plaintiff's symptoms

alone cannot establish a severe impairment. Symptoms "are an individual's own perception or

description of the impact of his or her physical or mental impairment(s)"). While Plaintiff

consistently references her diarrhea throughout the record, a colonoscopy, endoscopy, and stool

samples were all negative for colitis or IBS. Tr. 290. Plaintiff's treating physician, Dr. Mark

Litchman, diagnosed her with IBS as a diagnosis of exclusion. Tr. 289. However, due to a dearth

of objective diagnostic findings and the sole source of evidence being Plaintiff's statements of

symptoms, the ALJ declined to find Plaintiff's IBS a severe impairment. Tr. 13. Additionally, the

ALJ noted that Plaintiff complained of severe diarrhea in July, 2012, but gained eight pounds by

August, 2012. Tr. 13. The ALJ also noted that the record failed to show the array of symptoms

commonly associated with severe diarrhea, such as dehydration, malnutrition, or inability to keep

food down. Tr. 13. An ALJ is "entitled to draw inferences logically flowing from the evidence,"

and the ALJ's interpretation of the record was rational. *Macri v. Chater*, 93 F.3d 540, 544 (9th

Cir. 1996); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

15 – OPINION AND ORDER

III.    Lay Witness Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d);

404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Friends and family members in a position to observe the claimant's symptoms and daily activities

are competent to testify regarding the claimant's condition. *Dodrill*, 12 F.3d at 918-19. The ALJ

may not reject such testimony without comment and must give reasons germane to the witness

for rejecting her testimony. *Nguyen v. Chafer*, 100 F.3d 1462, 1467 (9th Cir. 1996). However,

inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at

512. The ALJ may also reject lay testimony predicated upon the testimony of a claimant properly

found not credible. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

Claudia Jones, a family friend, completed an adult functional report on Plaintiff's behalf.

Tr. 213-219. Ms. Jones stated that she saw Plaintiff daily, and that they watched movies because

Plaintiff "can barely walk." Tr. 213. She stated that Plaintiff's friends and family helped her

dress, brushed her teeth and hair, changed her clothes, reminded her to take medication, and

helped with household chores. Tr. 214-15. Ms. Jones stated that Plaintiff left the house twice per

week, but she did not shop. Tr. 215-16. Additionally, Ms. Jones stated that Plaintiff "snap[ped] at

the small things," was short tempered, "space[d] out" frequently, had difficulty remembering and

concentrating, and maintained her balance poorly. Tr. 217-18.

Ashley Buescher, Plaintiff's daughter, also completed an adult functional report on

Plaintiff's behalf. Ms. Buescher stated that she saw Plaintiff daily. Tr. 255. She also stated that

Plaintiff could barely walk, did not perform household chores, watched television, occasionally

read, and Ms. Buescher frequently reminded Plaintiff to bathe and brush her hair. Tr. 255-57.

Ms. Buescher and others shopped, paid bills, and drove for Plaintiff. Tr. 258. Additionally, Ms.

16 – OPINION AND ORDER

Buescher stated that Plaintiff had difficulty concentrating, had no hobbies, did not handle stress well, and had no social activities due to pain. Tr. 258-61.

The ALJ gave little weight to the lay witness evidence because both Ms. Jones and Ms. Buescher gave their function reports during temporary aggravations of Plaintiff's conditions. Tr. 17. The temporal nature of lay witness testimony is a germane reason to give that testimony little weight. *See Cole v. Astrue*, 295 Fed.Appx. 387, 389 (9th Cir. 2010). Ms. Jones provided her report while Plaintiff suffered from a broken foot, which the ALJ noted could account for her "inability to be mobile as desired, interfere with self-care and household chores, and potentially exacerbate her mood." Tr. 17. Ms. Buescher provided her report while Plaintiff temporarily suffered from the symptoms of opioid withdrawal after she stopped taking Morphine and Fentanyl. Tr. 262. Because each lay witness gave their report while Plaintiff suffered from a temporary aggravation of her symptoms, the ALJ did not err in giving those reports little weight.

IV.    Commissioner's Burden at Step Five

An ALJ must propose a hypothetical based on medical assumptions supported by substantial evidence reflecting the plaintiff's limitations. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). However, an ALJ may omit any alleged limitations that the ALJ has found to be not credible from the vocational hypothetical promulgated to the VE. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *see also Magallanes*, 881 F.2d at 756-57 (holding that it is proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record).

Plaintiff argues that the Commissioner failed to correctly evaluate Plaintiff's claim at step five of the disability process. However, Plaintiff's arguments are predicated on finding the ALJ erred in her assessment of Plaintiff's subjective symptom testimony, as well as the lay witness

17 – OPINION AND ORDER

evidence. Because I decline to overturn the ALJ's assessments, Plaintiff's argument is
unpersuasive.

## **CONCLUSION**

Because the Commissioner's decision is based on proper legal standards and supported
by substantial evidence, the Commissioner's final decision is AFFIRMED and this case
DISMISSED.

DATED this 3rd day of November 2016.

Honorable Paul J. Papak
United States Magistrate Judge

18 – OPINION AND ORDER